```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                      STATESVILLE DIVISION
                       5:01CV153-02-MU
```

```
CHARLES M. CASSELL, III,             )
     Plaintiff,                      )
                                     )
       v.                            )
                                     )
THOMAS SCHOBER, Officer employ-      )
   ed by the Iredell County          )
   Jail;                             )
GUERNY CONNOLLY, Officer employ-     )
   ed by the Iredell County Jail;    )
DAVID GUESS, Sergeant employed by    )
   the Iredell County Jail           )
KAYE CASS, Nurse by the Iredell      )          O R D E R
   County Jail;                      )
BOBBY GRUBB, Officer employed by     )
   the Iredell County Jail;          )
MICHAEL HOPPENRATH, employed by the  )
   Iredell County Jail;              )
TERRY ALMOND, Officer employed by    )
   the Iredell County Jail;          )
HAROLD HARP, Officer employed by     )
   the Iredell County Jail; and      )
DALE HAGUE, Officer employed by      )
   the Iredell County Jail,          )
     Defendants.                     )
_____)
```

**THIS MATTER** comes before the Court on plaintiff's civil rights Complaint brought under 42 U.S.C. §1983 (document # 1), filed August 30, 2001; on the defendants' Answer to that Complaint (document # 26), filed December 28, 2001; on the defendants' Motion for Summary Judgment (document # 33), filed November 6, 2003; on the plaintiff's multiple Motions To Dismiss the defendants' Motion for Summary Judgment (documents ## 45, 46

and 51), filed November 24, 2003 (## 45 and 46) and March 25, 2004; on the plaintiff's Motion for Trial (document # 47), filed December 1, 2003; on the plaintiff's Motions for Copies, for Subpoenas Duces Tecum, for Plea or Settlement, for Leave to File Additional Affidavits, and for an Order Directing Prison Personnel not to Mix-up Papers (documents # # 32, 54, 57, 60 and 62); and on the plaintiff's "Motion [T]o [D]ismiss . . . ," (document 61), filed April 7, 2005.

For the reasons stated herein, and for the further reasons stated in the defendants' supporting Memorandum, the plaintiff's Motion to Dismiss will be <u>granted</u>; the defendants' Motion for Summary Judgment will be <u>dismissed</u> as moot; the plaintiff's multiple Motions to Dismiss the defendants' Motion for Summary Judgment will be <u>denied</u>; the plaintiff's Motion for Trial (document #47) will be <u>dismissed</u> as moot; the plaintiff's Motions for Copies, Subpoenas Duces Tecum, for Plea or Settlement, for Leave and for an Order directed a prison personnel will be <u>dismissed</u> as moot; and the instant Complaint will be <u>dismissed</u> with prejudice.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Although the Court has determined that the plaintiff's Motion for a voluntary dismissal should be granted, the Court believes it is appropriate to set out enough of the background of this case to support it decision to grant such motion.

By his Complaint, the plaintiff set forth a series of un-related claims, none of which appear to have been exhausted, challenging the conditions which he allegedly encountered during the 15-month period of his pre-trial detention in the Iredell County Jail. For instance, the plaintiff alleged that his right to privacy was violated on an occasion in early November 2000 when defendants Almond and Guess strip-searched him and removed all of his property from his cell. The plaintiff also claims that on that occasion, defendants Almond, Hoppenrath and Grubb violated his rights when they confiscated certain letters (which he had received from a co-defendant) and refused to return them to him.

Second, the plaintiff complained that his rights were violated later in November 2000 when defendant Nurse Cass failed to honor his request for a "breathing treatment." The plaintiff also alleged that Cass committed negligence and malpractice when she failed to follow the discharge directions of a physician who attended to him at a local hospital (following an apparent suicide attempt). Also in connection with that incident, the plaintiff complained that defendants Hoppenrath, Grubb, and Harp violated his rights when they removed most of the items from his cell and kept him in a "suicide gown" and handcuffs for about an hour while they awaited the arrival of paramedics who were called to take the plaintiff to a local hospital for evaluation and

3

treatment.

Third, the plaintiff alleged that on an occasion in April 2001, his rights were violated when he again was placed on a 24-hour "suicide watch" by defendants Schober, Guess and Connolly after defendant Nurse Cass recommended that action. According to the plaintiff, Nurse Cass' recommendation was based merely upon information that the plaintiff had been overheard discussing his final burial arrangements on the telephone and upon information that he also had been talking about killing himself and/or dying.

Fourth, the plaintiff alleged that his right to access various courts was violated on four to six unspecified occasions when defendants Grubb, Hoppenrath, Almond, Harp and Hague allegedly confiscated unspecified "legal materials" from him, placed those items in his storage container, but later refused to return them. Similarly, the plaintiff complained that his rights were violated on an occasion in April 2001 when defendant Harp allegedly opened an envelope which he had addressed to a State Court, resealed it and returned it to him.

Fifth, the plaintiff complained about an occasion in May 2001, when defendant Hague "accidentally broke [the plaintiff's] reading glasses" while stopping a fight between other inmates. In particular, the plaintiff alleges that his rights were violated when he--after arguing with Hague about the incident and refusing to comply with Hague's directive that he "stop praising

4

the Lord"--was forcefully taken by Hague to segregation for 30 days.

Last, the plaintiff complained that defendants Schober, Guess, Almond, Connolly and Hague violated his rights when they, on unspecified "times," placed him "in certain areas of the jail knowing that the area[s were] cold and [could] cause a person with emphysema extreme pain or death."

In response to the plaintiff's allegations, the defendants filed an Answer, denying the material portions of his claims, and further denying that any of the plaintiff's constitutional rights had been violated by them.  Thereafter, the defendants filed a Motion for Summary Judgment, seeking the dismissal of the plaintiff's Complaint.  In support of that Motion, the defendants submitted affidavits and other documentary evidence, all of which tended to show that there are no genuine issues of material fact to be resolved, and that they are entitled to judgment as a matter of law.

That is, the defendants' evidentiary forecast tended to establish, <u>inter alia</u>, that the November 2000 searches and property removal resulted from Officers' discovery of prohibited contraband in the plaintiff's cell, including a shank which had been constructed from materials taken out of the plaintiff's leg brace--a fact which the plaintiff does not deny; that the other contraband which was removed consisted mainly of items which the

5

plaintiff either was surreptitiously attempting to pass to other inmates, or which he was using as bargaining tools with such inmates--all in violation of Jail rules; and, the forecast established that the plaintiff, in fact, was often sanctioned for his repeated violation of Jail policies and rules, including his assault of an officer and his repeated use of profanity.

The defendants' evidentiary forecast further tended to show that they returned and/or gave the plaintiff access to those items of his property which did not create security risks; and that the plaintiff also authorized the release of some of that confiscated property to Reverend Turner (his pastor) in lieu of having it returned.

With respect to the two "suicide watch" episodes, the defendants' materials tended to establish that they retrieved all potentially dangerous objects from the plaintiff and placed him on "suicide watch" only after medical personnel determined those precautions to be necessary due to the plaintiff's apparent suicide attempt and his other expressions of suicidal ideation; that putting the plaintiff in a "suicide gown" was consistent with Jail protocol for suicide risks; that they placed the plaintiff in restrains for the brief period only after he continued to remove his bandages while they were awaiting medical assistance; that Nurse Cass focused her attention on the plaintiff's self-inflicted wrist puncture instead of administering a

"breathing treatment" because that was the more serious injury; and that the plaintiff's allegations of negligence and malpractice against Cass are not cognizable in this §1983 action.

Ultimately, however, the defendants asserted that the plaintiff's failure to allege any actual harm establishes that he suffered no more than non-compensable <u>de minimis</u> injuries from their alleged conduct; and that even if their conduct violated any of the plaintiff's rights, they are entitled to qualified immunity on the plaintiff's belated request for damages.

It goes without saying that the foregoing evidentiary forecast is quite persuasive. Nevertheless, as this Court has noted, the plaintiff has filed a Motion to Dismiss the instant case--which Motion the Court initially took under advisement.

With regard to that Motion, the plaintiff reports that his desire to "drop the suit" is predicated upon the fact that he has made a faith-based conversion to Christianity, and he has drastically changed from the person who was detained at the Iredell County Jail during the period in question.

## II. **ANALYSIS**

Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, after a defendant has answered the Complaint, brought a counterclaim or otherwise responded to the action, a plaintiff can voluntarily dismiss such action "upon order of the court and upon such terms and conditions as the court deems proper."

7

Whether to grant a motion to dismiss under Rule 41(a)(2) is within the district court's discretion. Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). Further, "[i]t is implicit in this language [Rule 41(a)(2)] that the district court may dismiss the plaintiff's action either without prejudice or, by so specifying, with prejudice." Choice Hotels Int'l v. Goodwin and Boone, 11 F.3d 469, 471 (4th Cir. 1993), citing Andes v. Versant Corp., 788 F.2d 1033, 1037 (4th Cir. 1986).

In the instant case, the plaintiff has filed his Motion seeking a voluntary dismissal, and the defendants have not opposed that Motion. However, at the time that the plaintiff filed that Motion, the defendants already had filed a Motion for Summary Judgment along with supporting documentation which tends to establish that they are, in fact, entitled to a judgment as a matter of law. Accordingly, the Court will, in its discretion, grant the plaintiff's Motion to Dismiss. Furthermore, the Court will specify that such dismissal is with prejudice, particularly in light of the absence of any proof that the plaintiff even exhausted these allegations, the defendants' evidentiary forecast, and in light of the plaintiff's failure to overcome that forecast in any of his multi-page responses thereto.

Finally, as will be hereafter set forth with greater specificity, the Court will deny or dismiss as moot the remaining outstanding Motions which the plaintiff has filed in this case.

8

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The plaintiff's Motion to Dismiss (document # 61) is **GRANTED**;

2. The defendants' Motion for Summary Judgment (document # 33) is **DISMISSED** as moot;

3. The plaintiff's multiple Motions to Dismiss the defendants' Motion for Summary Judgment (documents ## 45, 46 and 51) are **DENIED**;

4. The plaintiff's Motion for Trial (document # 47) is **DISMISSED** as moot;

5. The plaintiff's Motions for Copies, for Subpoenas Duces Tecum, for Plea or Settlement, for Leave to File Additional Affidavits, and for Order Directing Prison Personnel not to Mix-up Papers (documents # # 32, 54, 57, 60 and 62) all are **DISMISSED** as moot; and

6 The plaintiff's Complaint (document # 1) is **DISMISSED with prejudice**.

**SO ORDERED.**

Signed: April 25, 2006

Graham C. Mullen
United States District Judge